# McDonald v. Breaux Ballard, Inc.

Oct. 24, 1944.

Robert L. Page for appellant.

Charles Morris for appellee.

OPINION OF THE COURT BY JUDGE REES—Reversing.

The appellee, Breaux Ballard, Inc., operates a garage in Louisville, Kentucky, where it stores, services, and repairs automobiles. On January 29, 1943, the appellant, Wilmoth McDonald, brought an action against the appellee to recover damages in the sum of $700 for injuries to her automobile alleged to have been sustained while it was in the custody of the defendant. The plaintiff alleged in her petition that she was the owner of a Dodge automobile of the reasonable value of $900, and that on December 23, 1942, she took it to defendant's garage for the purpose of having the brakes adjusted, for which she agreed to pay the defendant the usual and customary charges for such services, and the defendant agreed to make the necessary adjustments in a workmanlike man-

ner and to take proper care of the automobile until returned to her. She further alleged that the brakes were not adjusted; that the defendant neglected to take proper care of her automobile until it was returned; and that because of such failure it was greatly damaged and the value thereof was diminished in the sum of $700. In its answer the defendant admitted that it is a corporation engaged, among other things, in the servicing and repairing of automobiles, and the plaintiff took her automobile to its garage, but denied all other allegations contained in the petition. It developed on the trial that plaintiff's automobile was damaged by a fire which occurred in defendant's garage on December 23, 1942. At the conclusion of the plaintiff's testimony the court sustained defendant's motion for a directed verdict in its favor, and the plaintiff has appealed.

The court's action in sustaining the motion for a directed verdict for the defendant was based, no doubt, on the rule followed in many jurisdictions that no presumption or inference of a bailee's negligence arises as a matter of law from the mere fact that the property while in his possession was destroyed by fire, and that where it appears that the damage or loss was occasioned by such a specific cause as fire the burden is on the plaintiff to show that the fire was caused by the negligence of the bailee. The case was tried prior to the decision in Threlkeld v. Breaux Ballard, Inc., 296 Ky. 344, 177 S. W. 2d 157. The loss in that case and the loss in the present case were caused by the same fire. In the Threlkeld case the plaintiff alleged that the damage to her automobile was caused by the negligence of the defendant. She testified that she took her automobile to defendant's garage and left it there to be serviced, and that it was badly damaged by fire while it was in the defendant's custody. She introduced proof as to the extent of the damage sustained, but rested her case without attempting to prove any negligent act by defendant's employees or any circumstances as to how the fire occurred. In that case we adopted the rule that the bailor makes out his prima facie case, notwithstanding it is shown that the loss was caused by fire, and the burden is on the bailee to show that he exercised due care. The appellee attempts to distinguish this case from the Threlkeld case in that appellant undertook to introduce all available evidence regarding the manner in which the automobile was damaged and such evidence discloses no actionable negligence on the part of

the bailee, while in the Threlkeld case there was no evidence concerning the fire and the opinion goes no further than to hold that the bailee had the burden of proving due care.

The building occupied by the appellee was located on the north side of Broadway in Louisville, and it owned or rented a vacant lot on the opposite side of the street where it stored and exhibited used cars, The building consists of a showroom, a shed or driveway adjoining the showroom on the west, and a service department. The showroom and driveway front on the street and extend back about 100 feet to the service department, which is a room 90 feet wide and 100 feet in length and is also used for storage purposes. The service department was equipped with automatic sprinklers and was fireproof, but there were no sprinklers in other parts of the building. In the driveway about 15 feet from the sidewalk were two hoist grease racks where automobiles were oiled and greased. After appellant left her automobile to have the brakes adjusted, it was driven back to the service department where the work was done and it was then moved out of the service department and placed in the driveway. The appellee had directed two of its employees, Richard Thornton and a man named Asher, to put Super-Pyro, an antifreeze liquid, in the cars on the vacant lot. They backed a truck up to one of the grease racks, rolled two steel drums or barrels of Super-Pyro from the service department to the grease-rack, and hoisted one drum and rolled it onto the truck. As the drum of antifreeze was placed on the truck the fire started and spread rapidly. The roof of the driveway burned, and appellant's automobile and other automobiles in the driveway were badly damaged. On the truck was a crane and near the crane was a service battery used for boosting batteries on used cars and starting the engines in cold weather. Attached to the battery were two cables about 6 feet long. It is appellant's theory that the two cables attached to the service battery came in contact with each other or one of them came in contact with the chain on the crane and emitted a spark, igniting the antifreeze liquid, which is highly inflammable. Glenn J. Patton, an employee of appellee, testified that he was in the parts department and saw the truck on fire. It was backed up to one of the grease racks. Richard Thornton testified that he was the driver of the truck and was in the cab when the fire

started. His companion, Asher, rolled the drum of Super-Pyro onto the grease rack, hoisted the grease rack to a level with the body of the truck, and then rolled the drum into the body of the truck. He was asked what happened and said: ''Well, they rolled the alcohol on the truck, and when he first hollered I looked out, and the truck was on fire.'' He jumped out of the truck and ran toward the service department. Asher, the only person in a position to know how the fire started, was not introduced as a witness, but, under the rule announced in the Threlkeld case, it was not incumbent on appellant, the bailor, to show negligence on the part of the appellee by proof. She made out a prima facie case by showing delivery to the bailee in good condition and return in damaged condition, and the fact that she showed the damage was caused by fire did not relieve the appellee of the duty to show due care on its part.

Appellee cites Barret v. Ivison, 248 Ky. 243, 57 S. W. 2d 1005, 1008, in support of its contention that when a bailor undertakes to introduce all available evidence regarding the manner in which property was injured and such evidence discloses no actionable negligence on the part of the bailee, then there is no disputed fact to be submitted to the jury. In Barret v. Ivison the plaintiff fully developed the case, and, as said in the opinion, ''he did for appellee all that appellee could have done for himself.'' In the instant case appellant introduced two employees of appellee who testified that a fire occurred while a drum of antifreeze liquid was being loaded on a truck. At the time the fire occurred there were twelve or fifteen other employees in the building, and the one employee in the best position to know how the fire started was not introduced. Aside from this, we think the circumstances shown by the evidence were sufficient to authorize an inference by the jury that appellee had failed to exercise due care. Appellant's car had been moved from the fireproofed part of the building to the unprotected shed or driveway, and the fire started while appellee's employees were handling a highly inflammable article in this shed. Such occurrence is out of the ordinary course of events, and is explainable, if at all, by facts peculiarly within the knowledge of the appellee.

Appellee insists that there was no evidence tending to prove the market value of the automobile immediately before the fire or immediately after the fire, and that

442

the peremptory instruction to find for the defendant was proper for this reason. This phase of the case was not fully developed, but the evidence disclosed that appellant paid $1,035 for the automobile in November, 1941, was offered $1,000 for it some time in 1942 by the dealer who sold it to her, and that it was in good condition when delivered to appellee except the brakes needed adjustment. An agent of appellee purchased the automobile from appellant for $425 after the fire. The evidence was meager, but sufficient to authorize an instruction on the measure of damages.

The judgment is reversed with directions to grant appellant a new trial.